**E-Filed 5/20/2010**

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| HOHBACH REALTY COMPANY LIMITED PARTNERSHIP,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF PALO ALTO, a municipal corporation, and STEPHEN EMSLIE, an individual,<br><br>　　　　　　　　Defendant. | Case No.  10-339-JF (PVT)<br><br>ORDER[1] GRANTING DEFENDANT'S MOTION TO DISMISS<br><br>[re:  document no.  16] |

Defendant City of Palo Alto ("City") moves to dismiss Plaintiff's first amended complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  Defendant Stephen Emslie ("Emslie") joins the motion.  The Court has considered the moving and responding papers and the oral arguments of counsel presented at the hearing on April 30, 2010.  For the reasons discussed below, the motion will be granted, with leave to amend.

## I. BACKGROUND

Plaintiff Hohbach Realty Company Limited Partnership is the owner of real property

---

[1] This disposition is not designated for publication in the official reports.

1 located within Palo Alto and identified as Assessor's Parcel Nos. 132-32-003, 132-32-004, and 132-32-052 (the "Project Land"). First Amended Complaint ("FAC") ¶ 4. The ground water underlying the Project Land is contaminated with volatile organic compounds from cleaning solvents used by the semiconductor industry. FAC ¶ 45. This contamination is known as the "HP Plume". *Id.* Plaintiff desires to develop the Project Land by constructing a mixed-use project, including a multi-story building with an underground parking garage, research and development space on the ground floor, and residential apartments on the remaining floors. FAC ¶ 9. Plaintiff's original application for city approval of the development was denied because of the size of the proposed building. *Id.* To allow for a more streamlined application process, Plaintiff voluntarily altered its development plan, down-sizing the proposed building (the "Project"). FAC ¶ 10.

Within Palo Alto, a building permit cannot not be issued until a proposed project is approved by the Palo Alto Architectural Review Board (the "ARB"). City's RJN Ex. C, Palo Alto Municipal Code ("PAMC") § 18.76.020(b). To secure the advice of the ARB before making a full application for approval, an applicant may apply to the ARB for a "preliminary review". PAMC § 18.76.020(c). Upon a full application for ARB approval, the ARB reviews the application at a hearing. PAMC § 18.77.070(c)(1). After the hearing, the ARB makes a recommendation to Palo Alto's Planning Director, who may approve, approve with conditions, or deny the application. PAMC §§ 18.77.070(c)(2) and (d)(1). If the ARB continues the hearing on the application more than twice, the Director may make a decision without a recommendation by the ARB. PAMC § 18.77.070(d)(4). An applicant may appeal the Director's decision to the Palo Alto City Council. PAMC § 18.77.070(f). The City Council's decision is final. PAMC § 18.77.070(g).

The City must comply with the California Environmental Quality Act ("CEQA"), Cal. Pub. Resources Code 21000 *et seq*. CEQA requires that, prior to approving a project, the City must determine whether the proposed project will have an environmental impact of sufficient magnitude to require the preparation of an Environmental Impact Report ("EIR"). Cal. Pub. Resources Code § 21100(a). If the City determines that the project will not have a significant

1  environmental impact, the City may issue a "negative declaration", and no EIR need be prepared.
2  Cal. Pub. Resources Code § 21064.  If the City anticipates that the project will have a significant
3  environmental impact, but also determines that the impact can be mitigated by revisions to the
4  project, the City may issue a "mitigated negative declaration" ("MND") which similarly
5  eliminates the need for an EIR.  Cal. Pub. Resources Code § 21064.5.  The mitigating revisions
6  to the project must be either made or agreed to by the applicant.  *Id.*  CEQA requires that a
7  negative declaration or a mitigated negative declaration must be available for public review and
8  comment for at least twenty days.  Cal. Pub. Resources Code § 21091(b).  The City must review
9  and respond to each significant environmental issue raised by the comments.  Cal. Pub.
10 Resources Code § 21091(d)(2)(B).  An MND must be recirculated if it is substantially revised
11 after public notice is given.  14 C.C.R. § 15073.5.

12     On May 13, 2005, Plaintiff filed application number 05PLN-00175, seeking preliminary
13 review of the Project.  FAC ¶ 15.  The ARB was generally supportive.  FAC ¶ 16.  On August 4,
14 2005, Plaintiff filed application number 05PLN-00281, seeking full ARB review.  FAC ¶ 17.
15 Plaintiff engaged in a series of discussions regarding the Project with the City staff.  Emslie, who
16 then was the City's Planning Director, opposed the Project, relying on the Pedestrian & Transit
17 Oriented Development Ordinance (the "PTOD Zoning Ordinance") that had not yet been enacted.
18 FAC ¶¶ 21-22.  Emslie did not permit his staff to complete an MND before the ARB hearing.
19 FAC ¶ 31.  The ARB recommended approval of the Project despite the objections of Emslie and
20 his staff, FAC ¶¶ 29, 32, but Emslie denied the application for the same reasons provided in his
21 staff's report to the ARB.  FAC ¶ 34.  Plaintiff appealed the decision to the City Council,  FAC ¶
22 37, and Emslie prepared an MND for public comment only after Plaintiff had filed its appeal.
23 FAC ¶ 40.  The MND, which was circulated from November 1 to November 20, included a
24 provision that would have required Plaintiff to comply with the PTOD Zoning Ordinance.  FAC
25 ¶ 41.

26     On November 20, 2006, the City Council approved the project, subject to a condition that
27 twenty percent of the residential units would be offered at "below market rent".  The City
28 Council also recommended approval of the MND with the exception of the provision referring to

1   the PTOD Zoning Ordinance.  FAC ¶ 44.  On the same date, the California Regional Water

2   Quality Control Board ("Water Board") commented on the MND, noting that volatile organic

3   compounds had been found in the soil of the Project Land.  FAC ¶ 45.  Without informing either

4   Plaintiff or the City Council, Emslie amended the MND to incorporate this comment.  FAC ¶ 46.

5   On December 11, 2006, the City Council adopted the revised MND without recirculating it.

6   FAC ¶¶ 46-47.

7          On January 18, 2007, an association called Citizens For Upholding Zoning Regulations

8   filed a complaint in the Santa Clara Superior Court challenging the City Council's decision.

9   FAC ¶ 48.  On February 8, 2007, while that litigation was pending, Plaintiff applied for a

10  building permit.  FAC ¶ 49.  In July of 2007, Plaintiff received a demolition permit allowing it to

11  demolish several preexisting buildings on the Project Land "so as to clear the site for excavation

12  and further soil testing".  FAC ¶ 50.  All of the structures were demolished in August 2007.  *Id.*

13         On September 10, 2007, the Superior Court concluded that the MND had been

14  substantially revised without recirculation for public notice and that the City's failure to

15  recirculate the MND was a violation of CEQA.  City's RJN Ex. A at 3:22-25.  The Superior

16  Court "reversed" the City's approval of the Project based on the MND, and the City was "ordered

17  to recirculate the MND in its final form for public comment, or otherwise comply with CEQA".

18  City's RJN Ex. A at 4:2-4.  On October 9, 2007, the Superior Court issued a peremptory writ of

19  mandate, ordering that the City:

20      1.   Set aside its decision approving and adopting a Mitigated Negative Declaration
             ("MND") for [the Project].  This approval is remanded to [the City] which is
21           hereby ordered to recirculate the MND in its final form for public comment, or
             otherwise comply with the California Environmental Quality Act ("CEQA"). . . .
22
        2.   Set aside its Action No. 2006-10 Record of the Council of the City of Palo Alto
23           Land Use Action For [the Project]: 05PLN-00281 (Court House Plaza Company,
             Applicant) making findings in connection with its approval of [the Project] under
24           CEQA.  This Action No. 2006-10 is remanded to [the City] for reconsideration.

25      3.   Set aside in its entirety its decision to approve [the Project].

26  City's RJN Ex. B at 7 (2:6-17).  The Superior Court stated specifically that "this Court does not

27  direct [the City] to exercise its lawful discretion in any particular way".  *Id.* at 8 (3:3-4).

28         After the Superior Court issued the writ, Emslie wrote letter to Plaintiff directing it to

"submit a new application and fee to the Planning Department" in order to seek approval of the Project. FAC ¶ 59. Plaintiff disputes that the Superior Court's writ requires the submission of a new application. Plaintiff made several unsuccessful proposals to the City Council that addressed the issue of whether a new application was necessary to pursue approval of the Project. FAC ¶ 69.

In or about August 2008, Emslie assumed new duties in the City Manager's office, and Curtis Williams ("Williams") became the interim Planning Director. FAC ¶ 73. Williams indicated that he would support the Project if Plaintiff filed a new application. FAC ¶ 74. Under protest, Plaintiff did file a new application, number 08PLN-00295, and made revisions to the Project based on Williams's recommendations. FAC ¶¶ 75-76. A new MND was prepared and circulated in April 2009. FAC ¶ 79. The Water Board again submitted comments, stating that an undiscovered source of contamination may exist on the Project Land. FAC ¶ 80. In response, the City recommended that Plaintiff include a new mitigating measure: a full vapor barrier at a cost of over $500,000. *Id.* The City has approved other development projects similarly situated to the HP Plume without requiring this additional mitigation measure. FAC ¶ 95. Nonetheless, Plaintiff agreed to include the barrier under protest. *Id.* The MND was revised once again and recirculated from November 2, 2009 to December 1, 2009. FAC ¶ 81. The new application was set for an ARB hearing on December 3, 2009. FAC ¶ 82. However, the City's planning staff informed the ARB that the Project required certain variances and it was not recommending approval of those variances. *Id.* Based on this information, the ARB continued the hearing to "a date uncertain." FAC ¶ 83.

On January 25, 2010, Plaintiff filed the instant action, alleging inverse condemnation and violations of its substantive and procedural due process rights under the Constitution. On March 5, 2010, the City moved to dismiss. Instead of opposing that motion, Plaintiff filed the operative FAC, deleting its inverse condemnation and procedural due process claims and adding a new claim alleging violation of its Constitutional right to equal protection of the law. The instant

5

1  motion was filed on April 5, 2010.[2]

## II. MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(1), the City moves to dismiss Plaintiff's claims regarding substantive due process and equal protection under the law, arguing that the Court lacks subject matter jurisdiction because these claims are not ripe for adjudication. Pursuant to Fed. R. Civ. P. 12(b)(6), the City also moves to dismiss Plaintiff's claim regarding substantive due process for failing to state a claim upon which relief can be granted, arguing that Plaintiff does not hold a vested property interest that is protected by the Constitution.[3]

### A.   Legal Standard

"Like other challenges to a court's subject matter jurisdiction, motions raising the ripeness issue are treated as brought under Rule 12(b)(1)". *St. Clair v. Chico*, 880 F.2d 199, 201 (9th Cir. 1989). "In support of a motion to dismiss under Rule 12(b)(1), the moving party may submit 'affidavits or any other evidence properly before the court . . . . It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction.'" *Id.* (quoting *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). "The district court obviously does not abuse its discretion by looking to this extra-pleading material in deciding the issue, even if it becomes necessary to resolve factual disputes." *St. Clair*, 880 F.2d at 201. "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Tyler v. Cuomo*, 236 F.3d 1124, 1131 (9th Cir. 2000) (*quoting Graham v. FEMA*, 149 F.3d 997, 1001 (9th Cir. 1998). "A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support

---

[2] The instant motion addresses only the FAC. The City's motion to dismiss the original complaint will be denied as moot.

[3] The City also moves to dismiss any state law claims for relief that Plaintiff may be asserting in connection with the first claim in the FAC, which seeks an injunction. In its opposition papers, Plaintiff agreed that the FAC does not assert any claims under state law. Plaintiff's Opp'n at 13:10-12. Accordingly, the Court does not address this aspect of the motion.

1  of the claim that would entitle it to relief." *Colwell v. Department of Health and Human Services*, 558 F.3d 1112, 1121 (9th Cir. 2009) (*quoting Daniel v. County of Santa Barbara*, 288 F.3d 375, 380 (9th Cir. 2002).

"Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the court must construe the complaint in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)). Thus, a court need not accept as true conclusory allegations, unreasonable inferences, legal characterizations, or unwarranted deductions of fact contained in the complaint. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-755 (9th Cir. 1994).

Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995). When amendment would be futile, however, dismissal may be ordered with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

B.  **Documents considered**

The City has requested judicial notice of the Superior Court's Order Re: Petition for Writ of Mandate and Complaint for Relief, Judgment Granting Peremptory Writ of Mandate, and Peremptory Writ of Mandate. This request will be granted. *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (concluding that a court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." (quoting *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979)). The City also requests

1  judicial notice of Sections 18.76.020 and 18.77.070 of its Municipal Code.  This request also will
2  be granted.  *See N. County Cmty. Alliance, Inc. v. Salazar*, 573 F.3d 738, 746 n.1 (9th Cir. 2009)
3  (taking judicial notice of a local ordinance, noting that it was available to the public).  Finally,
4  the City requests judicial notice of a letter from Emslie to Plaintiff and a planning staff report to
5  the ARB related to application number 08PLN-00295.  Because the Court has not considered
6  these documents in determining the instant motion, this aspect of the City's request will be
7  denied as moot.

**C.   Ripeness**

"In land use challenges, the doctrine of ripeness is intended to avoid premature adjudication or review of administrative action. It rests upon the idea that courts should not decide the impact of regulation until the full extent of the regulation has been finally fixed and the harm cause by it is measurable." *Herrington v. County of Sonoma*, 834 F.2d 1488, 1494 (9th Cir. 1987).  In *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172 (1985), the Supreme Court set forth a two-prong ripeness test for federal takings claims. First, a takings claim "is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson*, 473 U.S. at 186.  The Supreme Court reasoned that the claim "cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question." *Id.* at 191. Second, a takings claim is not ripe until the property owner has availed itself of the available procedures for seeking just compensation for the taking. *Id.* at 195.  This is because "[t]he Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Id*. at 194.

Though Plaintiff has deleted its takings claim from the FAC, the Ninth Circuit has concluded that parts of the *Williamson* ripeness test also apply at least in some instances to due process and equal protection claims.  The parties appear to agree that the second prong of the *Williamson* test does not apply to claims other than takings claims.  "Takings that involve violations of due process may therefore be unconstitutional, 'notwithstanding any available

compensation.'" *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 485 (9th Cir. 2008) (quoting *S. Pac. Transp. Co. v. City of Los Angeles*, 922 F.2d 498, 507 n.11 (9th Cir. 1990)).

However, the Ninth Circuit has applied *Williamson*'s first prong to claims for violations of due process and equal protection if the claims are sufficiently related to a takings claim. *See Southern Pacific Transp. Co. v. Los Angeles*, 922 F.2d 498, 507 (9th Cir. Cal. 1990) (concluding that "[a]ll as-applied challenges to regulatory takings, whether based on the just compensation clause, the due process clause or the equal protection clause, possess the same ripeness requirement: a final determination by the relevant governmental body."); *Herrington v. County of Sonoma*, 834 F.2d 1488, 1494 (9th Cir. 1987), *overruled on other grounds by Nitco Holding Corp. v. Boujikian*, 491 F.3d 1086, 1089 (9th Cir. 2007) (applying the final decision requirement to a substantive due process claim alleging irrational, arbitrary, and capricious decisions that were unsupported by the evidence and an equal protection claim based on different treatment of similarly situated developers); *Norco Constr., Inc. v. King County*, 801 F.2d 1143, 1145 (9th Cir. 1986) (concluding that "under federal law the general rule is that claims for inverse taking, and for alleged related injuries from denial of equal protection or denial of due process by unreasonable delay or failure to act under mandated time periods, are not matured claims until planning authorities and state review entities make a final determination on the status of the property."). Here, the parties dispute both whether the final determination requirement is applicable and whether there has been a final determination.

### 1. Applicability of the final determination requirement

As discussed above, the Ninth Circuit has applied the final determination requirement at least to some claims under substantive due process or equal protection when the claims essentially present a takings claim under a different label. In *Herrington*, the plaintiffs owned a plot a land and sought to develop a residential subdivision. 834 F.2d at 1494. They worked with the municipal planning staff to produce an acceptable proposal. Although the planning staff previously had given no indication that the final version of the proposal was unacceptable, the proposal was denied upon submission. The plaintiffs appealed to the County's Planning Commission. At the appeal hearing, the planning staff presented a report that allegedly contained

Case No.  C10-339-JF (PVT)
ORDER GRANTING MOTION TO DISMISS
(JFEX1)

misrepresentations of fact and law.  The Planning Commission nonetheless reversed the staff's decision and approved the proposal.  Planning Commission's decision then was appealed to the County Board of Supervisors.  After more allegedly misleading information was presented to the Board of Supervisors, the proposal was denied.  The plaintiffs filed suit, alleging a violation of their substantive due process rights by the "irrational, arbitrary, and capricious" denial of their proposal. *Id.*  The plaintiffs also alleged a violation of their right to equal protection because the municipality approved similarly situated subdivision proposals within two years of denying their own proposal.  *Id.*  Citing to *Kinzli v. City of Santa Cruz*, 818 F.2d 1449 (9th Cir. 1987), the court concluded that *Williamson* final determination requirement applied to both the substantive due process and the equal protection claims.  *Herrington*, 834 F.2d at 1495.

     Plaintiff's allegations in the instant case are quite similar.  Plaintiff's substantive due process claim is predicated on allegedly **"arbitrary and unreasonable"** conduct, FAC ¶ 92, and its equal protection claim is predicated on the approval of similarly situated projects without requiring a $500,000 vapor barrier.  FAC ¶ 95.  This Court concludes that thethe final determination requirement applies to both claims.

     Plaintiff relies upon a line of cases following *Crown Point Development, Inc. v. City of Sun Valley*, 506 F.3d 851 (9th Cir. 2007).  Before *Crown Point*, the Ninth Circuit had concluded that "any challenge to land use regulation on substantive due process grounds was precluded by the Takings Clause." *N. Pacifica*, 526 F.3d at 484 (citing *Armendariz v. Penman*, 75 F.3d 1311 (9th Cir. 1996)).  However, the Supreme Court's decision in *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 542 (2005), "'pull[ed] the rug out from under' *Armendariz* and . . . recognized possible bases for a substantive due process claim." *N. Pacifica*, 526 F.3d at 484 (quoting *Crown Point*, 506 F.3d at 855-56) (brackets in the original).  While *Crown Point* and its progeny recognized that a plaintiff may bring a substantive due process claim in situations in which the Takings Clause also may apply, the cases do not stand for the general proposition that the *Williamson* ripeness test does not apply.

     **2.    Whether there has been a final determination**

     Without conceding that the final determination requirement applies, Plaintiff argues that

10

Case No.  C10-339-JF (PVT)
ORDER GRANTING MOTION TO DISMISS
(JFEX1)

the City's refusal to reconsider application number 05PLN-00281 and its demand for a new application did constitute the final determination to deny application number 05PLN-00281. The City disagrees, contending that its final determination on application number 05PLN-00281 was to *grant* the application and that decision was overturned by the Superior Court, not by the City. The City construes the Superior Court's peremptory writ of mandate as requiring Plaintiff to submit an entirely new application for the Project. In order to resolve this dispute, this Court must determine the bounds of the Superior Court's writ.

      This Court agrees with Plaintiff that nothing in the Superior Court's writ required Plaintiff to submit a new application. This conclusion, however, does not mean that there has been an actual final determination affecting Plaintiff's property rights. The Superior Court explicitly did not direct the City "to exercise its lawful discretion in any particular way." City's RJN Ex. B at 8 (3:3-4). In particular, the Superior Court did not direct the City to deny application number 05PLN-00281, nor did the Superior Court itself order that the application be denied. Instead, the Superior Court ordered the City to "set aside in its entirety its decision to approve [the Project]", *remanded* for further proceeding with respect to the MND, and ordered the City to "*recirculate* the MND in its final form for public comment, or otherwise comply with [CEQA]." City's RJN Ex. B at 7 (2:6-17) (emphasis added). Moreover, the writ required that the City:

> [s]et aside its Action No. 2006-10 Record of the Council of the City of Palo Alto Land Use Action For [the Project]: *05PLN-00281* (Court House Plaza Company, Applicant[4]) making findings in connection with its approval of [the Project] under CEQA. This Action No. 2006-10 is *remanded* to [the City] for *reconsideration*.

*Id.* (emphasis added). Plaintiff's second application had not been filed at the time the writ issued. If the writ had resulted in a final determination that somehow voided or denied application number 05PLN-00281, the City would not have had any application to reconsider and there would have been nothing for the Superior Court to remand. As a result of the Superior Court's writ, application number 05PLN-00281 still was pending before the ARB.

      Plaintiff alleges that the City's steadfast refusal to reconsider application number 05PLN-

---

[4] Court House Plaza Company is Plaintiff's predecessor in interest.

11

00281 amounts to a final determination of the earlier application. However, the focus of the *Williamson* ripeness test is not on any specific *application* for a land-use permit, but is on how a municipality applies its regulations to the *property* at issue. Regardless of the City's actions with respect to the first application, there still is an application for the Project pending before the ARB. Any differences between the first and second applications appear to be the result of Plaintiff's voluntary acquiescence to the City's requests. Because an application is pending, there has not been a final determination with respect to the Project or the Project Land. The City may well approve the Project, as it did previously.

### 3. Futility

The Ninth Circuit recognizes a "'futility exception' to the threshold requirement of a final decision. Under this exception, the requirement of the submission of a development plan is excused if such an application would be an 'idle and futile act.'" *Kinzli*, 818 F.2d at 1454 (citing *Martino v. Santa Clara Valley Water Dist.*, 703 F.2d 1141, 1146 n.2 (9th Cir.)). However, plaintiff "bear[s] the heavy burden of showing that compliance with local ordinances would be futile". *American Sav. & Loan Asso. v. County of Marin*, 653 F.2d 364, 371 (9th Cir. 1981). Plaintiff alleges, in a conclusory fashion, that pursuing the second application would be a futile exercise "in light of staff's stated opposition" to the needed variances. FAC ¶ 83. Such conclusory allegations need not be accepted. *Clegg*, 18 F.3d at 754-755. Plaintiff must allege more than mere opposition to establish futility. The facts of the instant case themselves demonstrate that staff's determinations can be appealed successfully.

### III. CONCLUSION

Plaintiff's substantive due process and equal protection claims will be dismissed because they are not ripe for adjudication. The Court does not reach the City's argument that Plaintiff lacks a vested interest in the property. Plaintiff's claim for an injunction, which Plaintiff asserts is based only on federal claims, also will be dismissed. While the dismissal is predicated on ripeness grounds, leave to amend will be granted. Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas*, 66 F.3d at 248. While the allegations in the FAC with respect to futility are insufficient, it is possible that

1 additional facts could remedy the deficiency.  Because the status of Plaintiff's proposal remains
2 fluid, the Court will enlarge the time normally allowed for an amended pleading.  Any such
3 pleading shall be filed and served within sixty (60) days of the date this order is filed.

**IT IS SO ORDERED.**

DATED: 5/12/2010

_____
JEREMY FOGEL
United States District Judge

Case No.  C10-339-JF (PVT)
ORDER GRANTING MOTION TO DISMISS
(JFEX1)